**BANNUM, INC., Plaintiff,**

v.

**CITY OF MEMPHIS, et al., Defendants.**

No. 86–2487–HB.

United States District Court, W.D. Tennessee, W.D.

June 30, 1986.

Appeal Dismissed Aug. 4, 1987.

Scott T. Wendelsdorf, Thomas V. Kennedy, Louisville, Ky., for plaintiff.

Minor Tait, Jr., Arthur J. Shea, Dedrick Brittenum Jr., Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

HORTON, Chief Judge.

This is an action for declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining questions of actual controversy between the parties as hereinafter more fully described.

Jurisdiction of this action is based on 28 U.S.C. §§ 1331(a), 1332, 1343(a)(3), and 1343(a)(4); 42 U.S.C. § 1983; and the Fifth and Fourteenth Amendments to the Constitution of the United States of America. The amount in controversy exceeds $10,-000.00, exclusive of interest and costs.

The issue presented is whether the Building Department of the City of Memphis, Tennessee, and the Memphis and Shelby County Board of Adjustment (defendants) acted arbitrarily and capriciously in violation of plaintiff's (Bannum's) federal constitutional rights when defendants denied Bannum a Certificate of Use and Occupancy to operate a Community Treatment Center at 333 Adams Avenue, Memphis, Tennessee.

Said property is located within an R–MM zoning district which, along with the R–MH, C–L, C–H, CBD, H, and CU zoning districts, specifically permits by right transitional homes. The term "Transitional Home" is defined by Memphis and Shelby County Zoning Ordinance Regulations as:

> TRANSITIONAL HOME: A residence used for the purpose of rehabilitating persons from correctional facilities, mental institutions, and alcoholic and drug treatment centers and operated by a public or private agency duly authorized and licensed by the state, which agency houses individuals being cared for by the agency and deemed by the agency to be capable of living and functioning in a community and which provides continuous professional guidance.

Bannum claims it is a transitional home as defined by the zoning ordinances of the City of Memphis, Tennessee, and is therefore, entitled by right to a Certificate of Use and Occupancy from defendants upon compliance with applicable regulations. Defendants, on the other hand, claim Bannum does not operate a transitional home but rather a pre-release center, a term used but not defined in the Building Code of the City of Memphis, because residents of the center are under restraint.

After a full evidentiary hearing and upon the entire record, the Court rules the Community Treatment Center operated by Ban-

num pursuant to contract with the United States Bureau of Prisons is a transitional home as defined by the zoning ordinances of the City of Memphis. The Court finds the decision of the Board of Adjustment denying Bannum's application for a Certificate of Use and Occupancy for the premises at 333 Adams Avenue, Memphis, Tennessee, to be an arbitrary and capricious decision premised upon an arbitrary classification of Bannum's operation as a pre-release center. Defendants thereby violated Bannum's federal legal rights which are protected by the due process and equal protection clauses of the Constitution and laws of the United States. The Court finds Bannum is entitled to declaratory and injunctive relief from this Court.

In reaching that conclusion, the Court finds the record establishes the following facts:

■ 1) The preponderance of the evidence in this record shows the Community Treatment Center operated by Bannum pursuant to contract with the United States Bureau of Prisons is a transitional home. The center is not a pre-release center as listed in the Building Code of the City of Memphis. It clearly meets the definition of a transitional home as defined by the zoning ordinance of the City of Memphis. Eugene Shaw, Chief United States Probation Officer for this district, testified the center provides *transitional services* for federal offenders moving from prison back into the Memphis community. The program provides a time of adjustment for a federal offender and allows an orderly and planned re-entry back into the community and a reuniting with family, friends and work life. In fact, counsel for the defendants stated substantially that when he said these prisoners are released from prison temporarily to live in the community to see if they can adjust to community life. This is certainly a description of the transitional period of a person living in a transitional home. Calling the Community Treatment Center a pre-release center will neither detract from nor take away its fully contemplated function as a transitional home. This is a time of passage; it is transitional,

it is not pre-release. When a person becomes a resident of this transitional home, he/she has already been released from the physical restraints of the prison environment.

■ 2) After having provided transitional services for federal offenders in the Memphis area for approximately one (1) year, Bannum encountered opposition from areas of the Memphis Community and the Memphis and Shelby County governments. This opposition resulted in direct governmental action, the effect of which has been to disrupt Bannum's services in the City of Memphis, Tennessee, and to interfere with Bannum's ability to carry out its contract with the United States Bureau of Prisons. The record in this case contains evidence which clearly shows that governmental action against Bannum was arbitrary and capricious. Further, governmental action against Bannum resulting in the denial of a Certificate of Use and Occupancy at 333 Adams Avenue, Memphis, Tennessee, is not based upon any rational connection with any legitimate governmental objective. The Salvation Army has heretofore operated a Community Treatment Center at 333 Adams Avenue. The Court can take judicial notice that in the same area there is a Salvation Army Store. Within brief walking distance, there is a mission for homeless street people known as the Memphis Union Mission. Also, within a stone's throw is the Shelby County Jail. Singling out Bannum for different treatment, prejudicial treatment, constitutes a denial of equal protection of the laws particularly where it has complied with all zoning requirements and regulations. This governmental action is also a denial of Bannum's substantive due process rights. Federal constitutional rights cannot be denied Bannum by local government officials acting in an arbitrary and capricious manner.

3) Bannum is entitled by right to a Certificate of Use and Occupancy to conduct a Community Treatment Center on the premises at 333 Adams Avenue, Memphis, Tennessee, and, in any other zoning district within the City of Memphis and Shelby County, Tennessee, where it fully complies

with zoning and building code regulations and where City/County governmental officials do not possess, by law, discretion in the exercise of their powers to grant certificates for the operation of transitional homes.

### Contentions of the Parties

*1) Bannum:*

It is the contention of Bannum that it was denied due process of the law and the equal protection of the laws when the defendants arbitrarily and capriciously denied its application for a Certificate of Use and Occupancy to operate a Community Treatment Center at 333 Adams Avenue, Memphis, Tennessee. Bannum claims it operates a transitional home as defined by the Code of Zoning Ordinances of the City of Memphis and not a Pre-release Center. Bannum claims a Pre-release Center is not defined in the zoning ordinances and its center was arbitrarily and capriciously classified by the defendants as a Pre-release Center to justify denying its application. Bannum claims the Adams Avenue property is zoned Central Business District (CBD) and that zoning allows it, as a matter of right, to locate its center in that zoning district and that defendants have no discretion to deny the certificate once Bannum complies with the regulatory requirements. Further, Bannum contends defendants had no rational basis for distinguishing between its intended use of the Adams Avenue location and the types of uses allowed by the zoning code. Finally, Bannum claims this action by the defendants denied it substantive due process rights and the equal protection of the laws guaranteed by the Constitution and laws of the United States.

*2) Defendants:*

First, the defendants argue this Court has no jurisdiction to hear this lawsuit and even if jurisdiction exists, the Court should abstain from exercising it.

Second, defendants claim Bannum cannot pursue this action under 42 U.S.C. § 1983 because Bannum's claim is essentially a property claim and Bannum must first exhaust its remedies as provided by local law before it can pursue its claim in federal court.

Third, defendants contend Bannum operates a halfway house for persons still under confinement to federal penal institutions. These persons are released to live in the community to facilitate their adjustment to community life. Defendants contend the Building Department of the City of Memphis and the Memphis and Shelby County Board of Adjustment denied Bannum's application for a Certificate of Use and Occupancy because Bannum did not qualify as a transitional home. According to the defendants, Bannum's operation is closer to a Pre-release Center, a term used in the building code. The residents of the center are under twenty-four (24) hour supervision and are under restraint even though they are outside the penal institution. It is contended this amounts to an operation of of a Pre-release Center, and, therefore, Bannum must have a special use permit for its center.

Fourth, defendants contend Bannum has failed to establish an irreparable injury and, as a result, is not entitled to injunctive relief.

### Witness Testimony

*Marvin O'Koon,* Secretary-Treasurer and General Counsel, Bannum, Inc., testified he is familiar with the Memphis program operated by Bannum, Inc. He testified to the following material facts:

1) Bannum is a private for-profit corporation chartered by the laws of the State of Kentucky. Bannum is licensed to do business in the State of Tennessee and in Memphis and Shelby County, Tennessee.

2) Bannum contracted with the United States Bureau of Prisons to provide services to male and female offenders, including personal counselling, family counselling, financial counselling, job counselling and other services—all designed to aid ex-offenders who live in Memphis, Tennessee, to return to the community and to re-integrate themselves into the community.

3) Persons housed in the Community Treatment Center are assigned to the center by the Bureau of Prisons and by the Federal Court system. Those offenders selected to participate in the program contract to abide by all of the rules of the center, obtain employment, open a bank account, avoid drug and alcohol abuse, violate no law and abide by curfew rules. Residents pay part rent when they are employed. They purchase their own food when employed. Medical care is provided in the community health facilities.

4) Residents are not physically restrained in the center. While there is a monitoring system, doors are not locked to keep residents inside the center. The program is structured to help residents motivate themselves to do well in the community and keep out of prison. It is a residency program providing continuous rehabilitation services so that a resident can re-enter his/her community and lead a productive life.

5) Bannum operated, for approximately one year, a Community Treatment Center at the Coach and Four Motel, Memphis, Tennessee. That program was under the direction of a retired United States Probation Officer. That center closed when the defendants placed an official governmental *Do Not Enter* sign on the door to the office of the center.

6) When Bannum was forced to move from the Coach and Four Motel, Memphis, Tennessee, due to the actions of the defendants and publicity, it located a six-unit apartment complex at 35 N. Idlewild, Memphis, Tennessee, in an area zoned RMM which, Bannum claims, allows the operation of a transitional home. However, community opposition to the center developed and defendants thereupon placed an official governmental Stop Work Order on the door of the premises.

7) Having been denied use of the premises at 35 N. Idlewild as a Community Treatment Center, Bannum located another property at 333 Adams Avenue, Memphis, Tennessee, in an area zoned Central Business District (CBD). According to O'Koon, an official of the City of Memphis informed him that he could not think of a better location in the City of Memphis and could not think of who would object. However, use of this property as a center was denied by the Building Department of the City of Memphis on May 6, 1986. The reason given was that Bannum operates a Pre-release Center under the Building Code and not a transitional home as defined by the zoning ordinances. Bannum was informed it should apply to the Memphis and Shelby County Board of Adjustment for a determination of whether it could use the Adams Avenue property for a Community Treatment Center.

8) One May 7, 1986, Bannum applied to the Memphis and Shelby County Board of Adjustment, Memphis, Tennessee, for a permit to use the 333 Adams Avenue property as a Community Treatment Center. In its letter of appeal to the Board, Bannum stated it planned to use the property exactly as it had been used by the Salvation Army, which had operated a Community Treatment Center on the premises and, the term which most aptly described the applicant's activities is that of transitional home as defined in the local zoning ordinance.

9) On May 28, 1986, the Board rejected Bannum's application. The Board affirmed the Building Department's classification of Bannum's proposed use of the premises as a Pre-release Center.

10) Bannum had a full hearing before the Board of Adjustment. Bannum did not appeal the final decision of the Board to the courts of the State of Tennessee. Instead, Bannum filed this lawsuit for a Declaratory Judgment and for injunctive relief in this Court.

*Eugene Shaw*, Chief United States Probation Officer, Western District of Tennessee, Memphis, Tennessee, testified:

1) The Community Treatment Program allows participating ex-offenders to be released from federal prison facilities 30, 60, 90 or 120 days before parole to come home to their community, seek employment and re-establish relations with their families. This humane approach is in lieu of the old

system of just handing a parolee a travel ticket upon release from prison.

2) Bannum was awarded the contract by the Bureau of Prisons to provide these services about one year ago. The Bureau of Prisons had previously contracted with the Salvation Army to provide these services in the City of Memphis.

3) The Bureau of Prisons has also contracted with other agencies in Memphis, such as the Transitional Center of Memphis, the Transitional Center for Women in Memphis, the Salvation Army and Serenity House.

4) Bannum provides transitional services for federal offenders moving from prison back into their community. The maximum time for a resident in the center is 120 days. Most residents, about 95% of them, are people who live in the Memphis/Shelby County area of Tennessee.

5) At present, Bannum operates the only Community Treatment Center in the Memphis/Shelby County area for ex-offenders who do not have alcohol or drug problems.

The Court relies upon the following legal authorities as support for its decision in this case: *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249 87 L.Ed.2d 313 (1985), *Littlefield v. City of Afton*, 785 F.2d 596 (8th Cir., 1986), *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir., 1983), *Merritt v. Wilson County Board of Zoning Appeals*, 656 S.W.2d 846 (Tenn.Ct.App.1983).

With regard to defendants' contention that injunctive relief is inappropriate absent a showing of irreparable injury, the Court finds the denial of plaintiff's equal protection and due process rights, in and of itself, sufficient to satisfy the requirement. Such rights are "so fundamental to our legal system and to our society that any violation thereof will cause irreparable harm irrespective of the financial impact." *Central Alabama Paving Inc. v. James*, 499 F.Supp. 629, 639 (M.D.Ala.1980).

Finally, the Court must reject defendants' argument that the doctrine of abstention should be applied in the present case. This action does not present any unsettled questions of state law that would be dispositive of this case. Therefore, Pullman-type abstention is obviously not appropriate. *See, Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Similarly, the Court finds no facts in this case that would call for Buford-type abstention, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or for the application of the doctrine of federalism as discussed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Therefore, for the reasons discussed herein, the Court concludes Bannum is entitled to a declaratory judgment that its proposed operation meets the definition of a "transitional home" as that term is defined in the local zoning ordinances. Having met all the requirements of the zoning regulations applicable to the operation of a transitional home, Bannum is entitled to a mandatory injunction directing defendants to issue a Certificate of Use and Occupancy for the operation of a Community Treatment Center at 333 Adams Avenue, Memphis, Tennessee.

Counsel for plaintiff is hereby directed to submit a proposed order/judgment consistent with this opinion.

IT IS SO ORDERED.