JEWETT et al., Appellants v. REDWATER IRRIGATING
ASSOCIATION, et al., RESPONDENTS, and THE STATE
WATER RESOURCES COMMISSION OF THE STATE OF
SOUTH DAKOTA et al., Appellants
(220 N.W.2d 834)
(File Nos. 11234, 11235. Opinion filed August 7, 1974)

Wm. E. Anderson, Belle Fourche, for plaintiffs and appellants.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and respondents.

William J. Srstka, Jr., Sp. Asst. Atty. Gen., Pierre, for defendants and appellants.

DUNN, Justice.

This lawsuit arose out of a demand made by the plaintiffs-appellants for delivery at a reasonable delivery rate of 165 miner's inches of irrigation water which plaintiffs claim was due under a claimed water right appurtenant. to plaintiffs' land. The Redwater Irrigating Association, defendants-respondents, refused to deliver any such water at any delivery rate and denied existence of any water right as claimed by the plaintiffs. The plaintiffs commenced this action for adjudication of water rights and determination of conflicting water rights. The State Water Resources Commission and the State of South Dakota intervened and filed an answer, counterclaim and cross claim seeking an adjudication of the water rights in the entire Redwater River Irrigating System. The State's motion for allowance of counterclaim and cross claim was denied by the trial court. From this denial of the counterclaim and cross claim and from a judgment for the Redwater Irrigating Association both the plaintiffs and the State Water Resources Commission of the State of South Dakota and the State of South Dakota appeal.

The facts involved are complicated but virtually undisputed, and may be summarized as pertinent to a decision in this case as follows: In March 1878, James M. Eaton, Sr. settled lands now owned by plaintiffs and received U.S. patents thereto in 1884 and 1891. The acreage in farmland consisted of 200 acres, 126 acres of which are, or have been, irrigated.

On May 5, 1878, James Newland located a water right on the east bank of the Redwater River in Butte County. Newland's water right appropriated 4,000 miner's inches of water to be used for irrigation and milling purposes.

The chain of title in issue here is to this water right staked out by James Newland on May 5, 1878. James Eaton, Sr. became involved when he joined with Newland and nine other farmers in digging the Newland Ditch which brought water from the Redwater River to the Eaton property as well as the other farms involved. In 1879 Newland and ten other farmers, including Eaton, incorporated the Redwater and Belle Fourche Milling & Irrigating Company. Newland then conveyed his water right to this newly formed corporation.

On November 2, 1889, John B. Wilson purchased all of the water rights of the Redwater and Belle Fourche Milling & Irrigating Company. On the same date he then transferred all of the water rights and locations owned by him to the Redwater Land and Canal Company. On November 10, 1902, the Redwater Land and Canal Company further secured its claim to the Newland Ditch by obtaining a quitclaim deed from James Newland for his water location and also had him reaffirm the conveyance of his water right to the Redwater and Belle Fourche Milling & Irrigating Company back in 1879.

On October 18, 1889 and at about the same time that James Wilson purchased all of the water rights from Redwater and Belle Fourche Milling & Irrigating Company, he also entered into a contract with James M. Eaton, Sr., under the terms of which Eaton received the right to take 200 miner's inches of water from the Newland Ditch each year at the going price and not to exceed $1.50 per miner's inch.[1] This contract was limited in the right to

---

1.   There is no evidence in the record as to the circumstances surrounding this contract; but coming within a few days of Wilson's purchase of the Newland water right from the Redwater and Belle Fourche Milling & Irrigating Company, of which Eaton was president, it can be inferred that Wilson was removing any objection that Eaton may have had as a stockholder or officer to the sale of the Newland water right by the corporation. In any event, James M. Eaton, Sr. and his heirs operated under this contract for 60 years without making any further claim to the Newland water right as being appurtenant to the Eaton land or otherwise. It was only after the sale of the land to Jewett that problems arose.

take water to Eaton and his heirs, and was expressly terminable in the event the Eaton land was sold out of the family.

The Redwater Land and Canal Company subsequently ran into financial difficulties and in October 1909 Redwater Irrigating Association, defendant herein, acquired all of the water rights once owned by Redwater Land and Canal Company from one Alfred Crebbin, acting as bondholder's trustee, in a mortgage foreclosure sale. This sale recognized the restrictive obligation to "furnish water to the lands of Eaton" according to the terms of the Wilson-Eaton contract.

In March of 1912 Redwater Irrigating Association and James M. Eaton, Sr. modified the Wilson-Eaton contract of 1889. The modification resulted in a trade being made of 35 miner's inches of water due Eaton's land for 35 shares of the Irrigating Association's original treasury stock. From that time until the present controversy approximately 165 miner's inches of water due under the contract for irrigation of plaintiffs' land have been conveyed each year through the Redwater Ditch at the delivery rate of $1.50 per inch per year.

In 1913 Eaton conveyed his remaining lands and all interests in the Wilson-Eaton contract to his two sons, Thomas Eaton and James Eaton, Jr. Subsequently, James Eaton, Jr. acquired all of the interest of Thomas Eaton. In 1959 James Eaton, Jr. conveyed the property to his wife, Mildred Eaton. In February 1961, Mildred Eaton executed a warranty deed to O. A. Jewett (plaintiff herein) to a portion of the property previously deeded to her by her husband. At the same time Mrs. Eaton executed a lease of the balance of the property to O. A. Jewett, which lease contained an option to purchase with the rental payments to be applied to the purchase price. The plaintiffs, Butler and Nyland, are daughters of James Eaton, Jr. and Mildred Eaton; they presently hold legal title to the land subject to lease with option to purchase to Jewett, and were substituted for Mildred Eaton as plaintiffs in this action.

In August 1968 the Redwater Irrigating Association brought suit to have the Wilson-Eaton contract, as modified, declared terminated because the land was no longer owned by James M.

Eaton, Sr.'s heirs. The court found that the lease with option to purchase and with the rental payments applying to the purchase price was a sale and that the lease was a mere attempt to circumvent the terms of the Wilson-Eaton contract. There was no appeal from this decision—rather, on August 11, 1970, O. A. Jewett, Joan Jewett and Mildred Eaton brought this suit against the Redwater Irrigating Association claiming that a water right existed appurtenant to the original Eaton land. From an adverse ruling by the circuit court, this appeal was taken.

The appellants' first contention is that the court erred in ruling the water rights used for irrigation within the Redwater Irrigating Association are not appurtenant to the land. As support for this contention the appellants would contend the water rights used for irrigation purposes had been appurtenant to this land ever since the inception of water right because a statute controlling such matters was in effect in 1878 when Newland filed his water right. Section 166 of the Civil Code, Revised Code of Dakota Territory 1877 stated:

> "A thing is deemed to be incidental or appurtenant to land, when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat, from or across the land of another. * * *"

The appellants would argue this statute was applicable to our situation. First of all they point out the "right used with the land" is the Newland water right. Secondly they contend it is without dispute the water was used "for its (the irrigated land's) benefit."

■ This contention is partially correct. It is without dispute the water was used for the benefit of the land, but the above mentioned section of the 1877 Code requires the "thing * * * by right used with the land" and in regard to land originally owned by James M. Eaton, Sr. and now held by the Jewetts partly in fee and partly by leasehold interest no "right" ever existed. This theory is supported in language found in the case of Butte County v. Lovinger, 64 S.D. 200, 266 N.W. 127,[2] when

---

2. This case dealt with the status of stock held in the same Redwater Irrigating Association that is involved in this litigation.

the Court stated: "These rights, (referring to the original water rights) in our opinion, vested in the original locators at the time they were acquired and not in those who used the water." Eaton never located a water right. Newland located the water right and no evidence was produced which would show James Eaton, Sr. ever succeeded to this right. Consequently in regard to Eaton's land the water used for irrigation purposes never gained the 1907 Act. These vested water rights in the original locators are recognized in the present day water right statute. SDCL 46-1-9 defines vested rights:

"* * *

(4) Rights granted before July 1, 1955 by court decree;

(5) Uses of water under diversions and applications of water prior to the passage of the 1907 water law and not subsequently abandoned or forfeited."

SDCL 46-1-10 provides:

"All vested rights as defined in § 46-1-9 acquired before July 1, 1955 are hereby in all respects validated."

■ Since the formation of the Irrigating Association in 1909 the right to use of water has been represented by the stock issued by the Association. The Eatons controlled 35 shares of this stock which represented their right to 35 miner's inches of water. The association is willing to allow and has been allowing the appellants-plaintiffs the 35 miner's inches of water. The Eatons had been receiving the other 165 miner's inches on the basis of a contractual obligation. This contractual obligation arose out of the Wilson-Eaton agreement of 1889 which the Association recognized as its obligation. The Eighth Judicial Circuit Court of Butte County in 1969 declared the contract as terminated. Consequently this agreement no longer binds the Association and the plaintiffs-appellants must look to their stock for the right to more water. This Court in Butte County v. Lovinger, supra, recognized that unless expressly provided in the by-laws, the water represented by such shares cannot be said to be appurtenant to the land on which it was used. Since this was not expressly

provided for in the present case the water does not become appurtenant to the land.

Having decided the water is not appurtenant to the land in question either by statutes in effect at the time the Redwater Irrigating Association was formed or because the water represented by the shares became appurtenant to the land, and because the Wilson-Eaton contract is no longer in effect, we would hold the plaintiffs-appellants not entitled to the additional 165 miner's inches of water withheld by the Redwater Irrigating Association. Chapter 180, Laws of 1907 and the present law on irrigation as found in Chapter 46-5 SDCL would warrant a different outcome if they were applicable, but Butte County v. Lovinger, supra, is dispositive of this issue and these statutes recognize vested water rights of the type we find in the present case.

■ The final point deals with the defendants-appellants' claim of error in the denial of its counterclaim and cross claim and the subsequent adjudication of the entire Redwater River Irrigation System. The cases recognize that ownership of water rights is subject to public regulation and that the Court does have jurisdiction to adjudicate all water rights within the stream system involved. This power found in the provisions of SDCL Chapter 46-10 should not be invoked in the present case because of the specific nature of this litigation. The origin of this litigation lies in the dispute as to the nature of the right to receive water on the land of the plaintiffs.

The granting or nongranting of the additional 165 inches of water to plaintiffs does not affect other water users above or below on the stream. This is a private fight between the plaintiffs and the Redwater Irrigating Association. It is simply a question of whether the plaintiffs or Redwater receive the 165 inches of water and does not affect other users. There is some evidence that Redwater is using more water than they have rights for, but that is not an issue in this lawsuit. The trial court did not err when it denied the State's request to join the other claimants of water rights and make a complete adjudication of the system.

Judgment affirmed.

All the Justices concur.